UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

| | |
|---|---|
| DEBORAH A. TUNSTALL | **DECISION** |
| Plaintiff, | **and** |
| | **ORDER** |
| v. | |
| | **16-CV-00683V(F)** |
| NANCY A. BERRYHILL,[1] Commissioner of | **(consent)** |
| Social Security, | |
| Defendant. | |

───────────────────────────────────────

APPEARANCES:		LAW OFFICES OF KENNETH R. HILLER
			Attorneys for Plaintiff
			TIMOTHY HILLER, of Counsel
			6000 North Bailey Avenue
			Suite 1A
			Buffalo, New York 14226

			JAMES P. KENNEDY, JR.
			UNITED STATES ATTORNEY
			Attorney for Defendant
			JOSHUA LERNER KERSHNER
			Assistant United States Attorney, of Counsel
			Federal Centre
			138 Delaware Avenue
			Buffalo, New York 14202, and

			STEPHEN P. CONTE
			Regional Chief Counsel
			United States Social Security Administration
			Office of the General Counsel, of Counsel
			26 Federal Plaza
			Room 3904
			New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On June 19, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c) and a Standing Order (Dkt. No. 19), to proceed before the undersigned. (Dkt. No. 19-1). The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on motions for judgment on the pleadings, filed on February 10, 2017, by Plaintiff (Dkt. No. 10), and on August 23, 2017, by Defendant (Dkt. No. 17).

**BACKGROUND**

Plaintiff Deborah Tunstall ("Plaintiff" or "Tunstall"), seeks review of Defendant's decision denying her Disability Insurance benefits and Supplemental Security Income ("SSI") ("disability benefits"), under Title II and Title XVI of the Social Security Act ("the Act"). In denying Plaintiff's applications for disability benefits, Defendant determined that Plaintiff had severe impairments of diabetes mellitus without complications, chronic obstructive pulmonary disease ("COPD"), obesity, and an adjustment disorder, non-severe impairments of high cholesterol, hypothyroidism, colon polyps and neck muscle strain, but that Plaintiff did not have an impairment or combination of impairments within the Act's definition of impairment. (R. 32).[2] Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform medium work with limitations to Plaintiff's ability to frequently interact with others, understand, remember and carry out complex and detailed tasks, and only occasional exposure to fumes, dust, odors, and

---

[2] "R" references are to the page numbers of the Administrative Record electronically filed in this case for the Court's review. (Dkt. No. 8).

other respiratory irritants. (R. 35). As such, Plaintiff was found not disabled, as defined in the Act, at any time from Plaintiff's alleged onset date of March 1, 2013, through the date of the Administrative Law Judge's decision on January 22, 2016.

## **PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits on July 28, 2014 (R. 189), that was initially denied by Defendant on October 27, 2014. On December 23, 2015, Plaintiff, represented by Kelly Laga, Esq. ("Laga"), appeared and testified at a hearing before Administrative Law Judge Timothy M. McGuan ("Judge McGuan" or "the ALJ"), along with vocational expert ("VE") Rachel Duchon ("Duchon" or "VE"), in Buffalo, New York. (R. 48-76). The ALJ's decision denying Plaintiff's claim was rendered on January 22, 2016. (R. 29-43). Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on July 6, 2016. (R. 1-5). This action followed on August 22, 2016, with Plaintiff alleging that the ALJ erred by failing to find her disabled. (Dkt. No. 1).

On February 10, 2017, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 10) ("Plaintiff's Memorandum"). Defendant filed, on August 23, 2017, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 17) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on September 12, 2017 ("Plaintiff's Reply Memorandum") (Dkt. No. 18). Oral argument was deemed unnecessary. Based on the following, Plaintiff's motion for

judgment on the pleadings is DENIED; Defendant's motion for judgment on the pleadings is GRANTED.

## **FACTS**[3]

Plaintiff, born on November 14, 1958, alleges that she is unable to work as a result of depression, diabetes and COPD. (R. 54-56). Facts pertinent to the issues raised in Plaintiff's Memorandum include Plaintiff's visit to Cynthia Liu-Chen, M.D. ("Dr. Liu-Chen"), on April 23, 2014 (R. 312-15), July 15, 2014 (R. 505-08), July 23, 2014 (R. 321-27), October 20, 2014 (R. 526-28), and August 16, 2015 (R. 571), where, upon completing a physical examination on Plaintiff, Dr. Liu-Chen evaluated Plaintiff with normal neurological and psychiatric examinations.

On August 25, 2014, Elizabeth Hole ("Ms. Hole"), a licensed mental health social worker, noted that Plaintiff reported depression resulting from the death of her sister and caring for her elderly parents. (R. 389). Ms. Hole assessed Plaintiff with adjustment disorder with depression (R. 402), and recommended Plaintiff attend counseling to address her grief and loss of employment. (R. 388, 402).

On October 1, 2014, Christine Wittenberg ("Counselor Wittenberg"), a mental health counselor with Horizon Health Services ("Horizon"), completed a mental status examination on Plaintiff that was normal, noting that Plaintiff's depression was situationally related to the recent death of Plaintiff's sister, Plaintiff's unemployment, and Plaintiff's care of her elderly mother. (R. 401-05).

---

[3] Taken from the pleadings and administrative record.

On October 3, 2014, Janine Ippolito, Psy.D., ("Dr. Ippolito"), completed a consultative psychiatric evaluation on Plaintiff and evaluated Plaintiff with coherent thought processes, depressed and tearful mood, intact attention and concentration and remote and recent memory skills, average intellectual functioning, activities of daily living that include light cooking, laundry, grocery shopping, driving, and interacting with friends and family, attending a training program for medical office assistants, and visiting her mother on a regular basis, and opined that Plaintiff's psychiatric problems may interfere with her ability to function on a daily basis. (R. 409). Dr. Ippolito also opined that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others with no limitations, and appropriately deal with stress with moderate to marked limitations due to her current emotional distress, and diagnosed Plaintiff with a recurrent, severe, major depressive disorder without psychotic features. *Id.*

On October 27, 2014, Hilary Tzetzo, M.D. ("Dr. Tzetzo"), completed a state agency consultative evaluation on Plaintiff upon reviewing Plaintiff's medical records, and opined that Plaintiff had a mild restriction to activities of daily living, mild difficulty maintaining social functioning, maintaining concentration, persistence and pace, noted that Plaintiff received limited psychiatric treatment, and that Dr. Ippolito's diagnosis of severe depressive disorder was inconsistent with other evidence in the record. (R. 83-84).

5

On November 3, 2014, Nurse Practitioner Elizabeth Ostrom ("N.P. Ostrom"), completed an initial psychiatric evaluation on Plaintiff and noted that Plaintiff reported sporadic depression for several years with increased symptoms resulting from the death of her sister and the loss of her job. (R. 542). N.P. Ostrom diagnosed Plaintiff with adjustment disorder with depressed mood and referred Plaintiff to individual counseling. (R. 545).

On January 14, 2015, Ms. Hole discharged Plaintiff from mental health counseling noting that Plaintiff declined further treatment because of changes to Plaintiff's insurance and improved symptoms. (R. 547-49).

On June 24, 2015, Ravi N. Sinha, M.D. ("Dr. Sinha"), a neurologist with Buffalo Medical Group, completed a physical examination on Plaintiff and noted that Plaintiff exhibited no anxiety, nervousness or depression, and that Plaintiff exhibited a normal psychiatric affect. (R. 585-86).

On July 28, 2015, Timothy McDaniel, M.D. ("Dr. McDaniel"), completed a physical examination of Plaintiff, and noted that Plaintiff's depression was in remission without medication treatment. (R. 608). On August 11, 2015, Plaintiff returned to Dr. McDaniel with upper quadrant pain. (R. 608). On October 13, 2015, Dr. McDaniel evaluated Plaintiff with emotional stress and noted that Plaintiff was waiting to begin mental health counseling. (R. 628).

On August 24, 2015, Dr. Sinha noted that Plaintiff reported no depression, nervousness or anxiety, and evaluated Plaintiff with a normal psychiatric examination. (R. 612-18).

6

On October 26, 2015, Kendra Washington ("Ms. Washington"), a licensed clinical social worker with Community Health Center of Buffalo ("CHCB"), completed an initial psychotherapy session on Plaintiff and noted that Plaintiff reported being stressed out from not being employed, caring for her elderly parents, and the death of her sister. (R. 631). On November 11, 2015, Plaintiff returned to Ms. Washington for "grief work," where Ms. Washington noted that Plaintiff exhibited a depressed mood with congruent affect and was stable with no objective signs of symptoms of distress. (R. 632).

1. **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . .. An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A. **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e); 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson*, 402 U.S. at 410.

**B.     Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. §

404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 1, 2013, the date of Plaintiff's application for disability benefits. (R. 31). Plaintiff does not contest this determination.

C.     **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities." The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments of diabetes mellitus without complications, chronic obstructive pulmonary disease ("COPD"), obesity, and an adjustment disorder, non-severe impairments of high cholesterol, hypothyroidism, colon polyps and neck muscle strain, and that Plaintiff did not have an impairment or combination of impairments as defined under 20 C.F.R. § 404.920(c). (R. 21-24). Plaintiff does not contest the ALJ's step two findings.

D.     **Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled"). The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 3.02 ("§ 3.02") (Chronic Pulmonary Insufficiency), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective Disorders). In this case, the ALJ determined that Plaintiff's impairments did not meet or equal the criteria for disability under §§ 3.02, or 12.04 of listed impairments. Plaintiff does not contest the ALJ's findings under step three of the disability review process.

**E.     Residual Functional Capacity**

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts, at the fourth step, to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that

the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform medium work with limitations to frequent interactions with others and frequent understanding, remembering, carrying out complex and detailed tasks, with occasional exposure to fumes, dust, odors and other respiratory irritants. (R. 35).

Plaintiff contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence as such assessment relied exclusively on Dr. Tzetzo's non-examining opinion to the exclusion of other evidence in the record. Plaintiff's Memorandum at 8. Plaintiff's contention on this issue is without merit. In particular, the ALJ's residual functional assessment of Plaintiff afforded great weight to Dr. Miller's finding that Plaintiff was stable (R. 414), some weight Dr. Ippolito's finding that Plaintiff was able to follow and understand simple and complex instructions, perform simple tasks independently, make appropriate decisions, relate adequately to others and maintain a regular schedule (R. 409), great weight to Dr. Tzetzo's opinion

13

that Plaintiff had a mild limitation to activities of daily living and no episodes of decompensation, and limited weight to Dr. Tzetzo's opinion that Plaintiff had mild limitations to social functioning, concentration, persistence and pace and that Plaintiff had no severe mental impairment. (R. 41). The ALJ's residual functional capacity assessment of Plaintiff thus relies on substantial evidence in the record and Plaintiff's motion on this issue is DENIED.

Plaintiff's further contention, Plaintiff's Memorandum at 10-12, that the ALJ substituted the ALJ's opinion for Dr. Ippolito's opinion by affording only some weight to Dr. Ippolito's opinion that Plaintiff's psychiatric problems may significantly interfere with Plaintiff's ability to function on a daily basis and by finding Dr. Ippolito's medical findings inconsistent with her medical source statement is also without merit. Dr. Ippolito's finding that Plaintiff was able to follow and understand simple directions and instructions, independently perform simple and complex tasks, maintain a regular schedule, make appropriate decisions, relate adequately with others, and deal appropriately with stress with moderate to marked limitations is supported by substantial evidence in the record. (R. 406-10). In particular, on July 23, 2014, Dr. Liu-Chen noted that Plaintiff's depressed mood improved after being let go from work, and consistently evaluated Plaintiff with a normal mood and affect on May 2, 2013 (R. 294), August 2, 2013 (R. 307), April 23, 2014 (R. 313), July 23, 2014 (R. 326), October 20, 2014 (R. 527), and June 15, 2016 (R. 571). Dr. Sinha evaluated Plaintiff with normal mood and affect on August 18, 2013 (R. 484), February 23, 2015 (R. 564), June 24, 2015 (R. 586), June 24, 2015 (R. 586), and August 24, 2015 (R. 599), and Dr. McDaniel evaluated Plaintiff with good mood, judgment and insight and mood with a full range of affect on

August 11, 2015 (R. 610), and October 13, 2015 (R. 628).  Moreover, Counselor Wittenberg's opinion on August 25, 2014, that precedes Dr. Ippolito's ambivalent opinion, noted that Plaintiff's depression was situationally related to the recent death of Plaintiff's sister, Plaintiff's unemployment, and Plaintiff providing care for her elderly mother.  (R. 378).  Given that several medical evaluations of Plaintiff's psychiatric condition, finding Plaintiff's condition to be normal or improving, as stated above, post-dated Dr. Ippolito's October 3, 2014 opinion that Plaintiff's ". . . problems <u>may</u> interfere with [Plaintiff's ] ability to function on a daily basis" (R. 409) (underlining added), the ALJ's determination to afford only some weight to Dr. Ippolito's finding that Plaintiff's psychiatric problems would likely interfere with Plaintiff's ability to function on a daily basis is therefore supported by substantial evidence in the record.  Plaintiff's motion on this issue is denied.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 10) is DENIED; Defendant's motion for judgment on the pleadings (Doc. No. 17) is GRANTED.  The Clerk of the Court is ordered to close the file.

So Ordered.

> */s/ Leslie G. Foschio*
>
> LESLIE G. FOSCHIO
> UNITED STATES MAGISTRATE JUDGE

DATED:    September 20, 2018
               Buffalo, New York